Justice Stevens,
concurring in part and concurring in the judgment.
The administration of decedents’ estates typically is governed by rules of state law and conducted by state probate courts. Occasionally, however, disputes between interested parties arise, either in the probate proceeding itself or elsewhere, that qualify as cases or controversies that federal courts have jurisdiction to decide. See, e. g., Reed v. Reed, 404 U. S. 71 (1971). In her opinion for the Court, Justice Ginsburg has cogently explained why this is such a case. I write separately to explain why I do not believe there is any “probate exception” that ousts a federal court of jurisdiction it otherwise possesses.
The familiar aphorism that hard cases make bad law should extend to easy cases as well. Markham v. Allen, 326 U. S. 490 (1946), like this case, was an easy case. In Markham, as here, it was unnecessary to question the historical or logical underpinnings of the probate exception to federal jurisdiction because, whatever the scope of the supposed exception, it did not extend to the case at hand. But Markham’s obiter dicta — dicta that the Court now describes as redundant if not incoherent, ante, at 311 — generated both *316 confusion and abdication of the obligation Chief Justice Marshall so famously articulated, see Cohens v. Virginia, 6 Wheat. 264, 404 (1821); see also ante, at 298-299. While the Court today rightly abandons much of that dicta, I would go further.
The Court is content to adopt the approach it followed in Ankenbrandt v. Richards, 504 U. S. 689 (1992), and to accept as foundation for the probate exception Markham’s bald assertion that the English High Court of Chancery’s jurisdiction did not “extend to probate matters” in 1789. 326 U. S., at 494; see ante, at 308. I would not accept that premise. Not only had the theory Markham espoused been only sporadically and tentatively cited as justification for the exception,[1] but the most comprehensive article on the subject has persuasively demonstrated that Markham’s assertion is “an exercise in mythography.”[2]
Markham’s theory apparently is the source of the Court’s reformulated exception, which “reserves to state probate courts the probate or annulment of a will and the administration of a decedent’s estate.” Ante, at 311. Although undoubtedly narrower in scope than Markham’s ill-considered description of the probate carve-out, this description also *317 sweeps too broadly. For the Court has correctly upheld the exercise of federal jurisdiction over actions involving the annulment of wills and the administration of decedents’ estates. In Gaines v. Fuentes, 92 U. S. 10 (1876), for example, the Court held that a defendant in an action to annul a will should be permitted to remove the case to federal court. In so doing, it explained:
“[WJhenever a controversy in a suit... arises respecting the validity or construction of a will, or the enforcement of a decree admitting it to probate, there is no more reason why the Federal courts should not take jurisdiction of the case than there is that they should not take jurisdiction of any other controversy between the parties.” Id., at 22.
Likewise, in Payne v. Hook, 7 Wall. 425 (1869), the Court explained that it was “well settled that a court of chancery, as an incident to its power to enforce trusts, and make those holding a fiduciary relation account, has jurisdiction to compel executors and administrators to account and distribute the assets in their hands.” Id., at 431. (In that same case, a federal court later appointed a Special Master to administer the estate. This Court upheld some of the Master’s determinations and rejected others. See Hook v. Payne, 14 Wall. 252, 255 (1872).)
To be sure, there are cases that support limitations on federal courts’ jurisdiction over the probate and annulment of wills and the administration of decedents’ estates. But careful examination reveals that at least most of the limitations so recognized stem not from some sui generis exception, but rather from generally applicable jurisdictional rules. Cf. Ellis v. Davis, 109 U. S. 485, 497 (1883) (“Jurisdiction as to wills, and their probate as such, is neither included in nor excepted out of the grant of judicial power to the courts of the United States”). Some of those rules, like the rule that diversity jurisdiction will not attach absent an inter *318 partes controversy, plainly are still relevant today. See, e. g., Waterman v. Canal-Louisiana Bank & Trust Co., 215 U. S. 33, 44-45 (1909); see also id., at 46 (reaffirming the in gremio legis principle). Others, like the rule that a bill in equity will lie only where there is no adequate remedy elsewhere, have less straightforward application in the wake of 20th-century jurisdictional developments. See, e. g., Case of Broderick’s Will, 21 Wall. 503, 510-512 (1875); Ellis, 109 U. S., at 503 (denying relief where plaintiff had “a plain, adequate and complete remedy at law”); see also Winkler, supra n. 2, at 112-113. Whatever the continuing viability of these individual rules, together they are more than adequate to the task of cabining federal courts’ jurisdiction. They require no helping hand from the so-called probate exception.
Rather than preserving whatever vitality that the “exception” has retained as a result of the Markham dicta, I would provide the creature with a decent burial in a grave adjacent to the resting place of the Rooker-Feldman doctrine. See Lance v. Dennis, 546 U. S. 459, 468 (2006) (Stevens, J., dissenting).

 Notably, Justice Joseph Bradley, a strong proponent of the theory that federal courts sitting in equity cannot exercise jurisdiction over probate matters because in England in 1789 such jurisdiction belonged to the ecclesiastical courts, see Case of Broderick’s Will, 21 Wall. 503 (1875), Gaines v. Fuentes, 92 U. S. 10, 24-25 (1876) (dissenting opinion), urged that “even in matters savoring of [ecclesiastical process, after an issue has been formed between definite parties,” the controversy should be heard by a federal court. See Rosenbaum v. Bauer, 120 U. S. 450, 460-461 (1887) (dissenting opinion) (citing Gaines, 92 U. S., at 17, and Hess v. Reynolds, 113 U. S. 73 (1885)).

 Winkler, The Probate Jurisdiction of the Federal Courts, 14 Probate L. J. 77, 126 (1997); see ante, at 299 (acknowledging Winkler’s analysis). Winkler also observes, citing Charles Dickens’ Bleak House (1853), that Markham’s “suggestion that the High Court of Chancery had lacked jurisdiction to ‘administer an estate’ was preposterous.” 14 Probate L. J., at 125, and n. 256.